IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Emmitt G. Roscoe, Jr., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18cv1608 (TSE/MSN) |
| | ) | |
| Lieutenant Curry, et al., | ) | |
|     Defendants. | ) | |

<u>MEMORANDUM OPINION</u>

Plaintiff Emmitt G. Roscoe, Jr., a Virginia inmate proceeding <u>pro se</u>, brings this civil-rights suit under 42 U.S.C. § 1983, against three correctional officers at Sussex I State Prison ("Sussex I"), claiming violations of his First and Eighth Amendment rights, and a supplemental state law claim under Virginia law. Specifically, Plaintiff claims that on September 29, 2018, in retaliation for complaining about his treatment at the prison, Officer J. Belshan refused to deliver one of his meals, and Lieutenant M. Curry and Officer S. Gbeddy assaulted him during his transfer from the shower to his cell, thus committing unlawful retaliation in violation of the First Amendment, excessive force in violation of the Eighth Amendment, and assault and battery under Virginia law.

At issue is defendants' motion for summary judgment and whether the existing record warrants judgment as a matter of law in defendants' favor. [Dkt. No. 41]. Plaintiff received the notice required by Local Rule 7(K) and <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 43], and he has filed a response in opposition [Dkt. No. 56]. Thus, the motion is ripe for disposition. For the reasons that follow, defendants' motion must be granted.

**I.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that defendants contend are undisputed. In response, plaintiff substantially complied with his obligations under those Rules by submitting statements of undisputed and disputed facts, although plaintiff failed to comply with the mandate to cite to specific record evidence.

Accordingly, the following statement of uncontested facts is derived from a review of defendants' statement of undisputed facts, the nonmovant's response, and the record.[1]

1. Plaintiff is an inmate incarcerated with the Virginia Department of Corrections, who was housed at Sussex I on September 29, 2018.

2. Defendant J. Belshan was a corrections officer at Sussex I at all times relevant to this litigation.

3. Defendant S. Gbeddy was a corrections officer at Sussex I at all times relevant to this litigation.

4. Defendant M. Curry was a Lieutenant at Sussex I at all times relevant to this litigation.

5. On September 29, 2018, Officer Belshan delivered breakfast trays to the offenders in the Delta 3 Housing Unit, where plaintiff's cell was located.[2]

6. While Officer Belshan was distributing breakfast, plaintiff complained to the officer that he and other inmates were denied opportunities to shower and for recreation and asked for an informal complaint to grieve those issues.

7. Later on September 29, 2018, plaintiff took a shower in the lower pod of the Delta 3 Housing Unit.

---

[1] The record of admissible evidence includes plaintiff's verified original complaint [Dkt. No. 1] and verified first amended complaint ("FAC") [Dkt. No. 7], which are the equivalent of affidavits opposing summary judgment. See Goodman v. Diggs, 986 F.3d 493, 498–99 (4th Cir. 2021).

[2] Defendants' statement of undisputed facts contains a typographical error in which plaintiff's housing pod is identified as "Delta 2 Housing Unit," rather than Delta 3. See [Dkt. No. 51-1, Laboy Suppl. Aff.].

8. Officer Gbeddy and Lieutenant Curry answered plaintiff's request to be removed from the shower.

9. Plaintiff was instructed to present his hands to be restrained, and he complied.

10. Lieutenant Curry instructed plaintiff to kneel so leg restraints could be applied; plaintiff refused.

11. Lieutenant Curry raised plaintiff's arms to cause him to kneel; once plaintiff was on the ground, Officer Gbeddy applied leg restraints, and the two officers escorted plaintiff to his cell.

12. N. Laboy is a Sergeant at Sussex I and is not a party to this lawsuit. He reviewed video footage of Housing Unit Delta 3 from September 29, 2018; the footage shows that day's breakfast delivery, as well as plaintiff's removal from the shower that afternoon.

In addition to these uncontested facts, plaintiff has submitted evidence in support of his claims that on September 29, 2018, Officer Belshan withheld his breakfast and that Lieutenant Curry and Officer Gbeddy assaulted him. Plaintiff attests, by affidavit, that Officer Belshan withheld Plaintiff's meal.[3] In particular, plaintiff declares that the Officer Belshan did not unlock the back portion of the tray slot to allow plaintiff to access his meal.[4] [Dkt. No. 56-1, Pl. Ex. 7, Roscoe Aff.]. Plaintiff also submitted an affidavit from another inmate, Ronald J. Mack, who attests that he heard Officer Belshan tell plaintiff that plaintiff "refused his meal" for being "verbally disruptive" by complaining. [Dkt. No. 56-1, Pl. Ex. 3, Mack Aff.]. Plaintiff further contends that, later that morning, he reported Officer Belshan's actions to Lieutenant Curry and

---

[3] Belshan asserts, in an affidavit, that he was assigned to Housing Unit Delta 3, plaintiff's housing unit, on September 29, 2018, but he does not recall whether he had been tasked with delivering meals that day. [Dkt. No. 42-1, Def. Ex. A, Belshan Aff. ¶ 4]. He declares that, "[h]ad I been assigned to deliver meals to that housing unit, I would not have denied any offender their meals, including offender Roscoe." [Id. ¶ 5]. Because Belshan does not have a specific recollection of delivering meals on that day and taking the facts in the light most favorable to the nonmovant, plaintiff's account is presented here.

[4] The video footage shows Officer Belshan approach each cell with the breakfast cart, but the viewer cannot see whether the officer unlocked the back portion so that plaintiff could actually access his breakfast tray. [Dkt. No. 42-4, Def. Ex. D, Laboy Aff. & Enclosure A (Video)].

asked for a formal complaint. Plaintiff asserts that Curry responded, "if [Plaintiff] did not let it go that he would personally make it his duty to make Plaintiff Roscoe wish that he had left it alone." [Dkt. No. 1, Compl. ¶ 14]. Additionally, inmate Mack declares that he overheard this conversation with Lieutenant Curry. [Dkt. No. 56-1, Pl. Ex. 3, Mack Aff.].

With respect to the shower incident, plaintiff attests in his opposing affidavit that, after his wrists were cuffed, Curry "began to use joint manipulation with force jacking Plaintiff Roscoe's arms so high in the air Plaintiff began to scream and holler out in pain." [Dkt. No. 1, Compl. ¶ 17]. Next, plaintiff declares, Curry ordered plaintiff to kneel and, when plaintiff refused, the officers slammed him on his head. Plaintiff says he was struck so hard that he temporarily lost consciousness and then "lay on the shower floor crying in pain and visibly injured." [Id.].

As mentioned supra, in addition to affidavits, Lieutenant Curry and Officer Gbeddy submitted surveillance video capturing their engagement with plaintiff. The video—which is not accompanied by audio—shows a four-minute encounter between plaintiff and Officer Gbeddy and Lieutenant Curry, beginning at 4:31 pm, when the officers approach the shower, and ending at 4:35 pm, when the officers secure plaintiff in his cell. The video largely confirms the officers' affidavits describing their encounter with plaintiff. Although the video has no audio, the officers cannot be seen raising plaintiff by his arms "high in the air," as plaintiff contends, nor can they be seen slamming plaintiff on his head.[5]

---

[5] Plaintiff's allegations in his FAC, as set forth supra, attempt to dispute the statement of undisputed facts set forth by defendants. Plaintiff's self-serving statements are largely unsupported by the video. Although the court must view genuinely disputed facts in the light most favorable to the nonmovant, the court "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006) (omitting quotation). More specifically, the Fourth Circuit has held that "when a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury would believe it, a court should not adopt [the plaintiff's] version of the facts for purposes of ruling on a motion for summary judgment.'" Witt v. W. Va. State Police, Troop 2, 633 F.3d 272, 276 (4th Cir. 2011) (quoting Scott v. Harris, 550 U.S. 372, 278 (2007)). District courts applying these decisions have

## II.

Defendants move for summary judgment on each of plaintiff's claims, arguing that the undisputed record does not demonstrate (i) that Officer Belshan retaliated against plaintiff for complaining about prison conditions by withholding his breakfast; (ii) that Officer Gbeddy and Lieutenant Curry retaliated against plaintiff for complaining about prison conditions by assaulting him in the shower, which, in turn, (a) amounted to excessive force in violation of the Eighth Amendment, and (b) assault and battery under Virginia law. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Hupp v. Cook, 931 F.3d 307, 317 (4th Cir. 2019) (internal quotation marks and citations omitted). At the summary judgment stage, courts must view the evidence, and draw all inferences, in the light most favorable to the nonmovant. See E.W. by T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

## III.

An Eighth Amendment claim for excessive force has an objective and subjective component. Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019). An inmate must demonstrate that the defendant officer (1) applied more than de minimis force (the objective component), and (2) applied that force "maliciously and sadistically for the very purpose of causing harm" (the subjective component). Id. at 112–13 (quoting Whitley v. Albers, 475 U.S. 312, 320–21 (1986)).

---

also held that, particularly in light of video evidence, a plaintiff's self-serving narration of the force used against him are precisely the type of "unwarranted inferences" that a court need not accept as fact. Wilson v. Hall, No. 7:09-cv-503, 2010 WL 2038907 (W.D. Va. May 20, 2010) (citing Kloth, 444 F.3d at 319); see also Lowe v. Matheney, No. 13-22416, 2015 WL 5795870 at * 3 (S.D. W. Va. Sept. 20, 2015) (Finding that "[t]he video submitted by the Defendants wholly contradicts the Plaintiff's allegations, warranting summary judgment.").

5

Absent direct evidence of malicious intent, it can be inferred by analyzing the following four factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021) (internal citations and quotation marks omitted). The subjective component is not satisfied when an officer applies force "in a good faith effort to maintain or restore discipline." Id. (quoting Whitley, 475 U.S. at 320).

Here, defendants argue that they applied the force necessary to apply leg restraints to plaintiff when removing him from the shower, and, thus, their actions did not amount to excessive force. Plaintiff concedes that he refused to kneel so the officers could apply leg restraints. But plaintiff asserts that factual disputes as to the amount of force Officer Gbeddy and Lieutenant Curry applied preclude summary judgment. Plaintiff is incorrect. The video evidence is sufficiently conclusive to support summary judgment and, even assuming arguendo that the video evidence is not conclusive, the undisputed facts reveal that plaintiff has failed to meet his burden.

As an initial matter, the video footage does not support plaintiff's assertion that the officers "jacked" his arms high in the air or slammed him on his head such that his "head hit the floor and bounced back up." [Dkt. No. 7, FAC ¶ 31]. Although the footage was taken from far away, the video does not show plaintiff's hands high above his head, nor does the video show the officers slamming plaintiff's head on the ground. And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Although the video footage does

6

not clearly show exactly what happened in the shower, at a minimum it does not support plaintiff's version of the incident.

Moreover, even assuming arguendo that the defendant officers applied more than de minimis force, plaintiff has not met his burden under the subjective component to demonstrate that the force was applied maliciously and sadistically for the purpose of causing harm. "Corrections officers act in a good faith effort to maintain or restore discipline—that is, with a permissible motive . . . when they attempt to preserve internal order by compelling compliance with prison rules and procedures." Brooks, 924 F.3d at 113. Here, it is undisputed that Plaintiff refused to comply with the defendant officers' orders to kneel so that leg restraints could be applied. Thus, the officers acted permissibly when they applied force to obtain Plaintiff's compliance with prison rules. To the extent the officers applied joint manipulation and raised Plaintiff's hands, such force was reasonable in relation to securing Plaintiff's compliance to kneel. Finally, the officers tempered the severity of their response by beginning with verbal orders and adding physical force only when Plaintiff refused to comply. Indeed, courts have found that officers acted constitutionally when those officers applied more severe force—like chemical agents—in similar situations. See Jennings v. Mitchell, 93 F. App'x 723, 724–25 (6th Cir. 2004) (concluding that officer did not apply excessive force when officer applied chemical spray to inmate who repeatedly refused order to exit shower); Canada v. Booth, No. 7:07-CV00421, 2008 WL 1969499, at *7 (W.D. Va. May 6, 2008) (finding no excessive force when officer sprayed chemical agent on inmate who refused to direct order to enter cell). Lieutenant Curry and Officer Gbeddy are therefore entitled to summary judgment on the Plaintiff's excessive force claim.

**IV.**

Defendants next argue that they are entitled to summary judgment on plaintiff's claims

for First Amendment retaliation based on the breakfast and shower incidents. Defendants first

argue that the video footage "affirmatively demonstrates that Offender Roscoe was not denied a

breakfast tray." [Dkt. No. 42, Def. Br. in Support of Summ. J., at 11]. Second, defendants

similarly argue that "[t]he video footage affirmatively demonstrates that excessive force was not

used on Offender Roscoe." [Id. At 12].

To state a First Amendment retaliation claim, "a plaintiff must allege that (1) he engaged

in protected First Amendment activity, (2) the defendant took some action that adversely affected

his First Amendment rights, and (3) there was a causal relationship between his protected

activity and the defendant's conduct." Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020)

(internal quotation marks, brackets, and citation omitted). After defendants filed their motion for

summary judgment, the Fourth Circuit in Martin adopted a burden-shifting framework to

evaluate the causation element in prisoner retaliation claims. Now, "[o]nce a plaintiff establishes

his protected conduct was a substantial or motivating factor in the defendant's decision to take

adverse action, the defendant is appropriately tasked with explaining why her decision was not

animated by retaliatory motives." Id. at 301. This new framework for the analysis of the

causation element is of no moment here because the undisputed material facts demonstrate that

plaintiff did not suffer the requisite adverse action—an element that plaintiff must prove before

the burden shifts to defendants—during breakfast and in the shower. Each alleged incident will

be addressed in turn.

First, contrary to defendants' assertion, the video does not definitively establish that

plaintiff received his breakfast tray from Officer Belshan. Although the officer can be seen

8

bringing the breakfast cart to each cell, plaintiff avers that Belshan did not unlock the back portion of the tray slot so that plaintiff could access the tray. In viewing the video, it cannot be seen whether Belshan, indeed, makes the tray accessible to plaintiff. Thus, the video does not conclusively contradict plaintiff's account and its contents cannot trump plaintiff's affidavit. Nevertheless, even if the plaintiff's version of events were accepted, Officer Belshan did not take any action that adversely affected plaintiff's First Amendment rights. "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017). As a sister court appropriately held, "missing one . . . meal . . . [does not] constitute such adversity that a 'person of ordinary firmness' would be deterred . . . from filing future grievances of lawsuits." See Edwards v. Scarberry, No. 7:19cv288, 2019 WL 2570533, at *3 (W.D. Va. June 21, 2019).

With respect to the shower incident, to be sure an assault as plaintiff describes would likely deter a person of ordinary firmness from exercising his First Amendment rights. See e.g., Burke v. Browns, 653 F. App'x 683, 702 (11th Cir. 2016) (concluding that "[b]eing slammed face-first into the ground for filing a grievance would likely deter 'a person of ordinary firmness' from filing future grievances"). But as discussed supra, the video evidence does not support plaintiff's version of events. Moreover, the undisputed evidence demonstrates that the defendants use of force was reasonable and justified based on plaintiff's failure to comply with the officers' commands. Plaintiff therefore cannot show that he suffered an adverse action. Accordingly, summary judgment must be granted to defendants on the First Amendment retaliation claims.

**V.**

Finally, defendants urge the Court to decline to exercise supplemental jurisdiction over the remaining state law claim for assault and battery. Federal courts may decline to exercise supplemental jurisdiction over a state-law claim after dismissing all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Accordingly, supplemental jurisdiction will be declined. See Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 553 n.4 (4th Cir. 2006) ("Once a district court has dismissed the federal claims in an action, it maintains 'wide discretion' to dismiss the supplemental state law claims over which it properly has supplemental jurisdiction.") (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 353–54 (1988)).

**VI.**

For the reasons set forth above, Defendants' motion for summary judgment will be granted.

    An appropriate order will issue separately.

    The Clerk is directed to provide a copy of this Opinion to plaintiff and to counsel of record for defendants.

Alexandria, Virginia
March 25, 2021

                  /s/
                  T. S. Ellis, III
                  United States District Judge